FILED
2015 Nov-02  PM 06:44
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

| | | |
|---|---|---|
| **DARLENE H. EDMONDS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No: 7:15-cv-01421** |
| **RUSHMORE LOAN** | ) | |
| **MANAGEMENT SERVICES, LLC,** | ) | |
| **and** | ) | |
| **CURTOSHA LAGRONE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Rushmore Loan Management Services, LLC ("Rushmore") and Curtosha LaGrone ("LaGrone") (collectively, the "Defendants") submit this Motion to Dismiss the Amended Complaint of Darlene H. Edmonds ("Edmonds") pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*.[1] As established herein, Edmonds's claims are unsupported by Alabama and federal law, and

---

[1] In addition, the Complaint should be dismissed as to Curtosha LaGrone as Edmonds has failed to properly serve her as required by Federal Rule of Civil Procedure 4. It appears that a certified mail receipt was filed into the Court on September 29 purporting to evidence service of the Complaint and Summons upon LaGrone. (Doc. 12.) However, the receipt contains an illegible signature. Further, the Complaint and Summons were sent to Rushmore's corporate address—not LaGrone's dwelling or usual place of abode. *See Williams v. Court Servs. & Offender Supervision Agency for D.C.*, 840 F. Supp. 2d 192, 199 n.3 (D.C. D.C. 2012) (holding that mailing the complaint and summons "to the individual defendants' workplace is not personal service, or service to a dwelling or abode or an authorized against, by a non-party" sufficient to satisfy the Federal Rules of Civil Procedure). Accordingly, the Complaint is due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5).

1

Edmonds has failed to allege facts that would support a viable claim for relief. In further support, the Defendants state as follows:

## I.    STATEMENT OF FACTS

1.    Edmonds executed a promissory note in favor of Bank of America secured by a mortgage for real property located at 13168 Jacqueline Drive, Lake View, Alabama 35111. (Doc. 7 ¶ 8.) (This Motion collectively refers to note and mortgage as the "Loan.")

2.    Edmonds failed to make the required Loan payments, and the Loan went into default at the end of 2012. (*Id.* ¶ 9)

3.    In January 2013, Edmonds filed a Chapter 7 Bankruptcy Petition, listing the Loan as debt. (*Id.* ¶¶ 10, 12-14.)

4.    The Bankruptcy Court issued an order discharging the Loan in April 2013. (*Id.* ¶ 17.)

5.    Bank of America then transferred servicing rights of the Loan to Rushmore. (*Id.* ¶ 21.)

6.    In August 2015, Edmonds sued Rushmore and Tasha Doe (a fictitious party), alleging that they unlawfully attempted to collect on the Loan. (Doc. 1.) She asserted claims of invasion of privacy; negligent, wanton, and/or intentional hiring, training, and supervision of incompetent debt collectors; negligent, wanton, and

intentional conduct; and violations of the Fair Debt Collection Practices Act. (*See generally id.*)

7.     On September 17, 2015, Edmonds filed an Amended Complaint (the "Complaint") against Rushmore and Curtosha LaGrone, asserting the same claims as in her original Complaint. (Doc. 7.)

## II.     STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the *Federal Rules of Civil Procedure* (the "Federal Rules") should be granted when it appears that the plaintiff's facts as pleaded fail to state a claim for relief that is plausible on its face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  In order to state a claim for relief, the Federal Rules require pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While factual allegations are not required to be detailed, they, nonetheless, must contain more than "labels and conclusions and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 555). "Facts that are merely consistent with the plaintiff's legal theory will not suffice when, without some further factual enhancement, [they] stop short of the line between possibility and plausibility of

entitle[ment] to relief." *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007).

## III.   ARGUMENT

As an initial matter, Edmonds's Complaint falls far below the pleading floor set by the Federal Rules as it is a classic "shotgun" pleading—a pleading which contains "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Each Count of Edmonds's Complaint "incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein." (*See, e.g.*, Doc. 7 ¶ 63.)[2] The Eleventh Circuit has time and again admonished such shotgun pleadings as a type of pleading that "does not comply with Rule 12(b)(6)'s pleading requirements." *Bowens v. Mail Officers of Turner Guilford Knight*, No. 13-10604, 2015 WL 3771248, at *1 (June 18, 2015). This is because a shotgun pleading makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins.Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014).

---

[2] Edmonds's Complaint contains two Paragraph 63s. (*See* Doc. 7 at 11-12.) This citation refers to the first Paragraph 63 on page eleven of her Complaint.

Because of the Complaint's deficient pleading, this Court should dismiss Edmonds's Complaint. However, even putting aside Edmonds's flawed pleading, each claim is due to be dismissed as a matter of law for the reasons discussed below.

**1.      <u>The Fair Debt Collection Practices Act Claim Fails.</u>**

Edmonds contends that Rushmore violated the Fair Debt Collection Practices Act ("FDCPA") in two ways: (A) by sending her "monthly mortgage statements" and (B) by calling her from December 2014 through June 2015, leaving voicemails, and trying to negotiate a deed in lieu of foreclosure with her. (*See generally* Doc. 7 ¶¶ 23-43.) But her claim fails as a matter of law for a number of reasons.

To prevail on her FDCPA claim, Edmonds must prove that she was the object of collection activity arising from a consumer debt and that the defendant engaged in an activity that the FDCPA prohibits, among other things. *Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1281 (N.D. Ala. 2011). Here, Edmonds cannot prove as a matter of law that she was the object of collection activity or that Rushmore's activities—either in sending monthly mortgage statements or in calling her—violated the FDCPA.

### A.     The Monthly Mortgage Statements

Edmonds claims that Rushmore's mailing of monthly mortgage statements in June, July, and August 2015 violated the FDCPA. (Doc. 7 ¶¶ 25-28.) Edmonds has attached the monthly statements to her complaint.[3] (*See* Doc. 7-1.)

However, federal law obligated Rushmore to send the statements. The Truth in Lending Act ("TILA," also known as Regulation Z) requires Rushmore to send monthly statements (known as periodic statements) that transmit certain information, including the amount of the principal balance of the Loan. *See* 15 U.S.C. § 1638(f). The purpose of these periodic statements is to ensure that "a consumer receives a monthly mortgage statement that discloses the current status of the consumer's mortgage loan obligation" in an easy-to-read format. *See* Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 31, 10995 (Feb. 14, 2013) (codified at 12 C.F.R. Pt. 1026).

The Consumer Financial Protection Bureau ("CFPB")—the agency charged with implementing TILA and promulgating regulations, *see* 15 U.S.C. § 1692k(e)—has determined that this type of informational statement is vitally important to borrowers. Given that, the regulations implementing TILA require that the periodic statements contain specific information regarding a residential

---

[3] Because these letters are attached as exhibits to Edmonds's Complaint, they may be treated as part of the Complaint for the purposes of resolving a motion pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

loan, including the amount due, due date, transaction activity, contact information, and delinquency information. *See* 12 C.F.R. § 1026.41(d). The statement must provide certain delinquency information, including the total amount needed to bring the account current. *Id.*

In addition, CFPB requires that periodic statements be sent to the borrower unless and until one of three things occurs: (1) the loan is transferred to another servicer; (2) the loan is fully paid or paid off through a refinance or the sale of the house; or (3) the loan is discharged in a foreclosure sale. *See* 2013 Real Estate Settlement Procedures Act (Regulation X) and Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, at 21 (June 7, 2013), *available at* http://files.consumerfinance.gov/f/201306_cfpb_compliance-guide_2013-mortgage-servicing-rules.pdf. The servicer "must continue to send periodic statements even when consumers are delinquent or in bankruptcy." *Id.*

When the CFPB set out these servicing rules prior to their implementation in January 2014, loan servicers and lenders in the residential mortgage industry immediately expressed concern to the CFPB regarding the periodic statement and other borrower contact requirements provided in the servicing rules and the potential that the communications could violate the FDCPA. In response to these concerns, the CFPB issued Bulletin 2013-12, which addressed the intersection between the communications required by the servicing rules and the FDCPA. *See*

CFPB Bulletin 2013-12: Implementation Guidance for Certain Mortgage Servicing Rules (Oct. 15, 2013).

The CFPB concluded that periodic statements are so important that even where consumers provide a "cease communication" direction to a debt collector under the FDCPA, servicers that are debt collectors are not liable under the FDCPA if they comply with the periodic statement requirements. *Id.* at 6. Thus, the CFPB determined that the information provided within the periodic statements was of the utmost importance to borrowers and should be provided even where a borrower has communicated a specific direction that they not be contacted regarding an account.

To that end, periodic statements that simply relay information required by federal law about the status of a borrower's loan are not considered debt collection activities under the FDCPA. *See, e.g.*, *McCready v. Jacobsen*, No. 06–2443, 2007 WL 1224616, at *1 (7th Cir. Apr. 25, 2007) (holding that letters informing the plaintiff of the current status of his account that do not make any demand for payment are not communications in connection with the collection of a debt under the FDCPA); *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1327 (S.D. Fla. Dec. 18, 2014) (holding that monthly statements sent for "informational purposes" that did not demand payment do not constitute debt collection activity).

In this case, the periodic statements sent by Rushmore were not dunning or collection attempts. Rather, they simply relayed information to Edmonds about the status of the Loan, as required by TILA. (*See generally* Doc. 7-1.) Indeed, the letters contained an express statement that they were being sent for "informational purposes only." (*Id.*) Specifically, they stated for borrowers that had received a bankruptcy discharge of the debt that "this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt." (*Id.*)

The fact that these statements were merely informational statements—and not impermissible collection attempts—remains true even though Edmonds's bankruptcy discharged the debt. In fact, the Southern District of Florida addressed an almost identical situation last year in *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319 (S.D. Fla. 2014), and held that monthly statements sent to the borrower, even after the debt had been discharged, did not constitute collection activity in violation of the FDCPA.

In *Helman*, the plaintiff obtained a mortgage loan, which was later discharged in bankruptcy. *Id.* at 1322. After the discharge, the defendant loan servicer sent monthly statements to the plaintiff. *Id.* at 1324. The plaintiff then sued the loan servicer, among others, asserting violations of the FDCPA. *Id.* at 1323-24. The loan servicer moved to dismiss the complaint, and the district court

held as a matter of law that the loan servicer's activities did not violate the FDCPA.

The court first noted that the statements at issue (like the statements sent to Edmonds) simply established "the balance Plaintiff would be required to pay to satisfy the mortgage on her residence" and contained an express disclaimer: "This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you . . . ." *Id.* at 1327. The court held that because the statements "did not demand payment and instead included express language for persons who had received a bankruptcy discharge," they did not constitute debt collection activity as a matter of law. *Id.*

This Court should reach the same conclusion—Rushmore's periodic statements, required by federal law, did not demand payment and included express language for borrowers who had received a bankruptcy discharge. This is not a debt collection activity under the FDCPA, and Edmonds's FDCPA claim should be dismissed.

## B.    *The Voicemail Messages and Phone Calls*

Edmonds's Complaint alleges that the Defendants violated the FDCPA by improperly communicating in connection with the collection of a debt when they left her certain voicemail message. (Doc. 7 ¶¶ 34-38.) However, this claim fails as the voicemail messages as alleged are not communications under the FDCPA.

As Edmonds acknowledges, in order to violate the FDCPA, the voicemail messages must be a "communication" under the FDCPA. (*See* Doc. 7 ¶¶ 34, 36.) The FDCPA defines communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The communication, therefore, must be "regarding a debt." *Id.*

Just last month, the Sixth Circuit considered whether a voicemail message was "regarding a debt." In *Brown v. Van Ru Credit Corp.*, --- F.3d ----, No. 15-1323, 2015 WL 6220521 (6th Cir. Oct. 22, 2015), the loan servicer left a voicemail message stating:

> Good morning, my name is Kay and I'm calling from Van Ru Credit Corporation. If someone from the payroll department can please return my phone call my phone number is (877) 419-5626 and the reference number is * * * * * * 488 . . . .

*Id.* at *1. The plaintiff argued that this message violated the FDCPA. *Id.* The loan servicer moved for judgment on the pleadings, and the district court granted the motion. *Id.* The Sixth Circuit affirmed, reasoning that to be a communication under the FDCPA, the communication "must at a minimum imply the existence of a debt"; otherwise, it "cannot be understood as 'regarding a debt'" as required by the FDCPA. *Id.* at *2.[4]

---

[4] The Sixth Circuit in *Brown* considered whether the defendant violated the FDCPA's prohibition against communications with third parties. 2015 WL 6220521, at *1. But its discussion of whether the voicemail message constituted a communication still applies because the Sixth Circuit applied the one and only definition of communication within the FDCPA to the voicemail message at issue. *See* 15 U.S.C. § 1692a(2) (setting forth the definition of

The same is true in this case. The voicemail messages simply asked for a return call and gave a telephone number to call back. (Doc. 7 at ¶¶ 34, 37.) Nothing in the messages implied the existence of a debt or otherwise mentioned the debt. Besides that, the voicemail messages contained very little information and did not demand payment. Simply put, they are not communications in regards to a debt and therefore Edmonds's claim that such messages violated the FDCPA fails as a matter of law. *See Helman*, 85 F. Supp. 3d at 1328 (holding that a door hanger that asked the borrower to give the loan servicer a call was not debt collection activity).

Insofar as Edmonds asserts that phones calls made by the Defendants violated the FDCPA, such a claim also fails. Edmonds alleges that during the phone calls, Defendants "stated that they were not attempting to collect any money but were trying to get a deed in lieu of foreclosure." (Doc. 7 ¶ 24.) Like the voicemail messages, this is not debt collection. *See Santoro v. CTC Foreclosure Serv.*, 12 F. App'x 476, 480 (9th Cir. 2001) (affirming the grant of a motion to dismiss and holding that "[a] letter suggesting loan workout options is not seeking to collect the debt."); *Miller v. Wells Fargo Bank, N.A.*, No. 1:12–CV–2708–RWS, 2013 WL 1189503, at *3 (N.D. Ga. Mar. 21, 2013) (holding that the plaintiff failed to demonstrate that she was the object of collection activity where communications

---

communication to be used throughout the Fair Debt Collection Practices Act to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium").

from a law firm merely informed her of the pending foreclosure sale and were not communications in an attempt to collect a debt); *Gillespie v. Chase Home Fin., LLC*, No. 3:09–CV–191–TS, 2009 WL 4061428, at **5-6 (N.D. Ind. Nov. 20, 2009) (holding that the plaintiffs had not been the object of collection activity where letters to them were in the nature of providing information as opposed to demanding payment of a debt owed and observing that "[a]lthough ensuring payment of the debts cannot be denied as the Defendant's ultimate goal, the letters themselves did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form"); *Porter v. Fairbanks Capital Corp.*, No. 01 C 9106, 2003 WL 21210115, at *3 (N.D. Ill. May 21, 2003) (holding that a videotape encouraging borrowers to contact the loan servicing center and suggesting possible loan workout options did not demand payment and could not be construed as a communication in connection with the collection of any debt).

Similarly, to the extent that Edmonds claims that Defendants violated the FDCPA by communicating with her after being notified that she was represented by counsel, such a claim fails because, as alleged, Defendants' communication did not attempt to collect a debt. (*See* Doc. 7 ¶ 24 (noting that during Rushmore's phone calls, its "agents stated that they were not attempting to collect any money but were trying to get a deed in lieu of foreclosure").) This is not a communication

13

"in connection with the collection of any debt" as is required to establish FDCPA liability. *See* 15 U.S.C. § 1692c(a)(2); *id.* § 1692a(2). And this is true regardless of whether the call occurred before or after Edmonds retained counsel. *See Santoro*, 12 F. App'x at 480 (holding that a letter offering a loan workout sent to the borrower even though the defendant knew that the borrower was represented by counsel did not violate the FDCPA because the letter was not debt collection); *Gillespie*, 2009 WL 4061428, at *6 (dismissing the plaintiff's claim that the defendant impermissibly communicated with her after learning that she was represented by counsel when the communications did not amount to communications "in connection with the collection of [the] debt").

What's more, Edmonds's conclusory allegation that "Rushmore and/or Defendant Curtosha contacted Plaintiff by phone despite receiving notice that the Plaintiff was represented by counsel" does not save her FDCPA claim. (*See* Doc. 7 ¶ 41.) This allegation does not provide any details regarding this communication, and therefore this Court cannot conclude that such communications were for debt collection purposes. *See Selby v. Bank of Am.*, 2010 WL 4347629, at **6-8 (S.D. Cal. Oct. 27, 2010) (considering a claim under California law that "mirrors the FDCPA" and looking to the FDCPA to hold that where the complaint failed to "provide any detail regarding the [defendants'] communications" after learning

14

that the plaintiff was represented by counsel, the compliant failed to state a claim for relief and was due to be dismissed).

For these reasons, this Court should dismiss Edmonds's FDCPA claim.

### C.    The Bankruptcy Code Precludes Edmonds's Claim

Finally, even assuming for the sake of argument that the calls, voicemail messages, and monthly statements constituted collection activity under the FDCPA, Edmonds's claim still fails because the Bankruptcy Code precludes her claim. Edmonds's Complaint asserts that "[i]t is illegal to attempt in any manner to collect [Edmonds's] discharged debt." (Doc. 7 ¶ 30.)

Although the Eleventh Circuit has not addressed the issue,[5] a number of other courts have held that a plaintiff cannot maintain an FDCPA action based on conduct that violates a provision of the Bankruptcy Code (like an allegation that the defendant has violated the discharge injunction) because such violations are dealt with exclusively by the Bankruptcy Code. *See, e.g.*, *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002) (holding that the plaintiff, who alleged that the defendant violated a discharge injunction by attempting to collect a debt after it had been discharged, could not maintain a claim under the FDCPA); *Necci v. Univ. Fid. Corp.*, 297 B.R. 376, 379-81 (E.D.N.Y. 2003) (holding that the

---

[5] *See Crawford v. LVNV Funding, LLC*, 758 F.2d 1254, 1262 n.7 (11th Cir. 2014) (declining to decide whether the Bankruptcy Code preempts the FDCPA).

Bankruptcy Code precludes a FDCPA claim alleging that the defendant violated the FDCPA by sending a post-discharge collection letter).

For example, in *Walls*, the plaintiff alleged that the loan servicer violated the FDCPA by attempting to collect on a debt that had been discharged. 276 F.3d at 510. The plaintiff argued that she could maintain such an action under the FDCPA "because the bankruptcy is over and done with, while the FDCPA (whose purpose is to prevent bankruptcy) is still needed to protect a debtor who has been discharged." *Id.* The Ninth Circuit rejected this argument. *Id.* It held that because her FDCPA claim rested on an alleged violation of the bankruptcy discharge injunction, the Bankruptcy Code (which addresses discharge injunction violations) provided her sole remedy. *Id.* ("While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code."). And the remedy for a bankruptcy discharge injunction violation is contempt, not a private right of action. *Id.* at 506, 510. According to the court, "[t]o permit a simultaneous claim under the FDCPA would allow through the back door what [the plaintiff] cannot accomplish through the front door—a private right of action." *Id.* at 510.

The same result obtains here. Edmonds contends that Rushmore has violated the discharge order by allegedly trying to collect on the Loan and therefore has violated the FDCPA. She cannot maintain such an action, though, as her sole

remedy is a claim under the Bankruptcy Code. As a result, her FDCPA claim is due to be dismissed.

### 2.   Edmonds's Invasion of Privacy Claim Fails.

In Count II of her Complaint, Edmonds alleges that the Defendants invaded her privacy by "unlawfully attempting to collect a debt." (Doc. 7 at ¶ 64.) In other words, Edmonds claims that the Defendants invaded her privacy by engaging in debt collection.

Notably, even if a defendant's activity violated the FDCPA (though, for the reasons explained above, Defendants have not violated the FDCPA), that alone does not constitute an invasion of privacy under Alabama law. *Leahey v. Franklin Collection Serv., Inc.*, 756 F. Supp. 2d 1322, 1327 (N.D. Ala. 2010). Indeed, even if a debt collection is "annoying, embarrassing, and upsetting," such collection does not amount to an invasion of the debtor's privacy. *Id.*

Instead, an invasion-of-privacy claim under Alabama law requires a showing of "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985). A defendant's actions must "exceed the bounds of reasonableness." *Id.*

Alabama law has set a "high bar" for invasion-of-privacy claims. *Leahey*, 756 F. Supp. 2d at 1328 n.7. And the activity at issue must involve "egregious"

conduct. *Id.* For instance, when a debt collector called the debtor twenty-eight to thirty-five times and called the debtor a "deadbeat" and other profane names, a court found that to be sufficiently egregious conduct that invades a debtor's privacy. *See Barnwell*, 481 So. 2d at 865-66 (noting that the collection involved "coarse, inflammatory, malicious, and threatening language").

But absent an allegation of such egregious conduct, a plaintiff's invasion-of-privacy claim must be dismissed. *See, e.g.*, *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1308-09 (11th Cir. 2007) (evaluating Alabama law governing invasion-of-privacy claims and affirming dismissal of a claim where the plaintiff presented evidence that her supervisor routinely used profane language in the office, propositioned her, requested that she perform oral sex on him in the office, and repeatedly unzipped his fly in her presence because, even assuming the allegations to be true, "the harassment . . . was not sufficiently outrageous as a matter of Alabama law" to sustain an invasion of privacy claim); *Brown v. Encore Capital Grp. Inc.*, No. 2:14-cv-01152-JEO, 2015 WL 1778380, at *4 (N.D. Ala. Apr. 20, 2015) (dismissing the plaintiff's invasion of privacy claim because, although she alleged that she had been annoyed, embarrassed, or upset, her allegations did not rise to the level of an actionable claim); *Glenn v. Checksmart Fin. Co.*, No. 2:13-cv-17157-KOB, 2014 WL 279677, at *3 (N.D. Ala. Jan. 7, 2014) (dismissing the plaintiff's invasion of privacy claim and holding that a

voicemail message and numerous calls, which the plaintiff alleged caused her to suffer anxiety and emotional distress, among other things, did not support a claim of a highly offensive intrusion).

In this case, Edmonds has not asserted facts demonstrating conduct by the Defendants that could be considered sufficiently outrageous or offensive to a reasonable person. Without allegations of conduct establishing a campaign of deliberate harassment by the Defendants, Edmonds's claim necessarily fails. *See Deutsche Bank Trust Co. Americas v. Garst*, 2:11–cv–04027–WMA, 2013 WL 4851493, at *10 (N.D. Ala. Sept. 11, 2013) (dismissing an invasion of privacy claim, finding that such intrusion claims in mortgage servicing context have survived only where the servicer "hounded" the plaintiff, with "repeated conduct equating deliberate harassment[ ] or systematic campaigns designed to vilify the debtor or expose him to public ridicule").

### 3.   The Negligent, Wanton, and Intentional Conduct Claim Fails.

Count IV of Edmonds's claims that "Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its [sic] dealings with and about Plaintiff as set forth in this Complaint." (Doc. 7 ¶ 88.) Edmonds's Complaint insufficiently pleads this claim, and, in fact, this Court has previously dismissed an identically-pleaded claim.

In *Thompson v. Resurgent Capital Services, L.P.*, No. 2:12-cv-01018-JEO, 2015 WL 1486974, at \*26 (N.D. Ala. Mar. 31, 2015), the plaintiff made the exact same allegation. The court dismissed the claim, finding that a FDCPA violation does not establish a breach of a common-law duty of reasonable care. *Id.* Moreover, the plaintiff alleged only damages of mental anguish and emotional distress (not that she suffered physical injury). *Id.* And, according to the court, "the nature of Defendants' alleged conduct, whether painted as wanton, reckless, or even intentional, is not such that it might allow Plaintiff to recover for what is a purely emotional injury without at least a threat of physical harm." As a result, the plaintiff's claim failed as a matter of law.

Like the complaint in *Thompson*, Edmonds's Complaint alleges only emotional distress. (*See* Doc. 7 at 18.) She does not allege a threat of physical harm. Thus, her claim fails as a matter of law, and this Court should dismiss it.

### 4.   The Negligent, Wanton, and/or Intentional Hiring, Training, and Supervision of incompetent Debt Collectors Claim Fails.

In Count III of her Complaint, Edmonds claims that Rushmore "negligently wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors." (Doc. 7 ¶ 72.) This Court should dismiss this claim because Edmonds has failed to establish that any allegedly incompetent employee committed a common-law Alabama tort.

"To sustain a claim for negligent or wanton hiring or supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort." *Leahey*, 756 F. Supp. 2d at 1328-29. If the plaintiff's underlying tort claims fails as a matter of law, she cannot maintain a claim for negligent, reckless, and wanton training and supervision. *Brown*, 2015 WL 1778380, at *4.  For example, in *Jackson v. Countrywide Home Loans, Inc.*, No. 2:11-CV-327-MEF, 2012 WL 777180, at *8 (M.D. Ala. Mar. 7, 2012), the court dismissed the negligent or wanting hiring or supervision, training and/or retention claim because the plaintiff failed to sufficiently allege a state-law tort claim. *See id.* ("Plaintiff has not alleged an invasion of privacy cause of action nor do the alleged facts support such a cause of action. Accordingly, Plaintiff's negligent or wanton hiring claim is due to be dismissed with prejudice."). In this case, Edmonds's state-law tort claims fail as a matter of law for the reasons discussed above. As a result, Count III of her Complaint is due to be dismissed.

## IV.   CONCLUSION

Based on the foregoing, Edmonds's Complaint is due to be dismissed in its entirety, *with prejudice*.

Respectfully submitted,

/s/ Jade E. Sipes
JADE E. SIPES (ASB-2546-O10R)

Attorney for Rushmore Loan Management
Services, LLC and Curtosha LaGrone


**OF COUNSEL**:
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
420 20th Street North, Suite 1600
Birmingham, Alabama 35203
Telephone (205) 328-0480
Facsimile (205) 322-8007
jsipes@bakerdonelson.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2015, the foregoing has been served upon the following counsel of record via the Court's electronic filing system:

S. Scott Allums, Esq.
S. Scott Allums, P.C.
506 North 18th Street
Bessemer, Alabama 35020


/s/ Jade E. Sipes
OF COUNSEL